UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CHRISTINE LEE CHATAGNIER | CIVIL ACTION NO. 6:12-cv-02785 |
| VERSUS | JUDGE DOHERTY |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED and that this matter be DISMISSED WITH PREJUDICE.

### BACKGROUND

The claimant, Christine Lee Chatagnier, was born on July 9, 1970.[1] She obtained a GED in 1995,[2] pursued some college courses without obtaining a degree, and obtained a two-year commercial art degree from Salina Vo Tech in Salina,

---

[1]   Rec. Doc. 9-1 at 111.

[2]   Rec. Doc. 9-1 at 129.

Kansas.[3] She served in the military from 1989 to 1993.[4] She has work experience as a nurse assistant in a nursing home, as a medical assistant and phlebotomist in a doctor's office, as a specialty tech and scrub tech at a medical center, as a vinyl technician in a sign shop, and as an inspector at an automobile auction site.[5] At the time of the hearing, she was working part-time as a stocker in the health and beauty department at a Wal-Mart store.[6]

On February 12, 2010, at the age of thirty-nine, she applied for disability insurance benefits, alleging a disability onset date of April 16, 2009.[7] A contemporaneous disability report indicates that the conditions allegedly limiting her ability to work are retinopathy and macular degeneration, high blood pressure, and high triglycerides.[8] Her current appeal has to do solely with the retinopathy and macular degeneration.

---

[3] Rec. Doc. 9-1 at 32.

[4] Rec. Doc. 9-1 at 111.

[5] Rec. Doc. 9-1 at 33-35, 141-156.

[6] Rec. Doc. 9-1 at 32.

[7] Rec. Doc. 9-1 at 111.

[8] Rec. Doc. 9-1 at 128.

In May 2010, a determination was made that Ms. Chatagnier is not disabled.[9] She then requested a hearing,[10] which was held on April 11, 2011 before Administrative Law Judge ("ALJ") Steven C. Graalmann.[11]

The ALJ issued an unfavorable ruling on July 7, 2011.[12] Ms. Chatagnier requested review by the Appeals Council,[13] but the Appeals Council denied her request.[14] Therefore, the ALJ's ruling is the Commissioner's final decision. In October 2012, Ms. Chatagnier instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[15] Ms. Chatagnier now argues that the Commissioner erred in failing to find that she is disabled because of her vision problems.

Ms. Chatagnier testified that she was first diagnosed in 1997, at the age of 27, with a condition resulting in a loss of visual acuity that is variously referred to as

---

[9] Rec. Doc. 9-1 at 55.

[10] Rec. Doc. 9-1 at 62.

[11] A transcript of the hearing is found in the record at Rec. Doc. 9-1 at 28-54.

[12] Rec. Doc. 9-1 at 16-24.

[13] Rec. Doc. 9-1 at 9.

[14] Rec. Doc. 9-1 at 4.

[15] Rec. Doc. 1.

central serous retinopathy, macular degeneration, and macular neuropathy.[16] The record evidences Ms. Chatagnier's treatment with eye specialists from May 2008 through February 2010. She saw Dr. Paul D. Wishaar at Vitreo-Retinal Consultants and Surgeons, P.A. in Wichita, Kansas from 2008 through 2009. On March 18, 2009, Dr. Weishaar reported that he had diagnosed Ms. Chatagnier with chronic central serous chorioretinopathy as well as choroidal neovascularization, and he treated both eyes using Visudyne therapy and Avastin.[17] Choroidal neovascularization is the creation of new blood vessels in the choroid layer of the eye and a common symptom of the "wet" form of macular degeneration.[18]

After moving to Louisiana, Ms. Chatagnier sought treatment with Dr. Scott Gauthreaux in January and February 2010. Dr. Gauthreaux's diagnosis was chronic central serous choroidopathy,[19] also known as "CSC." "Central serous choroidopathy is a disease that causes fluid to build up under the retina, the back part of the inner

---

[16] Rec. Doc. 9-1 at 42.

[17] Rec. Doc. 9-1 at 248.

[18] Choroidal neovascularization, http://en.wikipedia.org/wiki/Choroidal_neovascularization, last viewed on Nov. 18, 2013.

[19] Rec. Doc. 9-1 at 294.

eye that sends sight information to the brain. The fluid leaks from the blood vessel layer under the retina. This area is called the choroid."[20]

Dr. Gauthreaux most recently measured Ms. Chatagnier's vision at 20/25 in her left eye and 20/CF in her right eye.[21] This indicates that Ms. Chatagnier has very good vision in her left eye but the vision in her right eye is so poor that it cannot be measured using the familiar Snellen chart with the big "E" at the top.[22] Dr. Gauthreaux's description of her vision as 20/CF indicates that her vision is in the first or best of four categories used to classify visual acuity that cannot be measured using a Snellen chart.[23] Although Ms. Chatagnier testified that Dr. Gauthreaux has treated her eyes with Visudyne and an experimental medication that is actually approved only for treating colon cancer,[24] the record contains no evidence of any such treatments by

---

[20] Medline Plus, U.S. National Library of Medicine, National Institute of Health, http://www.nlm.nih.gov/medlineplus/ency/article/001612.htm, last viewed on Nov. 18, 2013.

[21] Rec Doc. 9-1 at 294.

[22] Visual acuities "hand motion" and "counting fingers" can be quantified with the freiburg visual acuity test, http://www.ncbi.nlm.nih.gov/pubmed/16505064, last viewed on Nov. 18, 2013.

[23] These four categories are "counting fingers," "hand motion," "light perception," and no light perception." Visual acuities "hand motion" and "counting fingers" can be quantified with the freiburg visual acuity test, http://www.ncbi.nlm.nih.gov/pubmed/16505064, last viewed on Nov. 18, 2013.

[24] Rec. Doc. 9-1 at 45-46.

Dr. Gauthreaux. Dr. Gauthreaux's records indicate that he did not treat Ms. Chatagnier's eyes but opted, instead, to merely monitor them.

### ASSIGNMENT OF ERRORS

Ms. Chatagnier contends that the Commissioner erred (1) in failing to address the effects of her macular degeneration on her ability to perform sustained work activity and (2) in finding that she can "make a successful adjustment to other work without substantial evidence to support that conclusion in light of the vocational expert's testimony."[25]

### STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[26] If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[27] Substantial evidence is more than a mere scintilla and less than a preponderance.[28] A finding of

---

[25] Rec. Doc. 10 at 2.

[26] See, e.g., *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[27] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995), citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

[28] See, e.g., *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[29] Finding substantial evidence requires scrutiny of the entire record as a whole.[30] In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[31]

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[32] Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[33] Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[34]

---

[29] *Boyd v. Apfel,* 239 F.3d at 704; *Hames v. Heckler*, 707 F.2d at 343-44.

[30] *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[31] *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

[32] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[33] 42 U.S.C. § 423(d)(1)(A).

[34] 20 C.F.R. § 404.1572.

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled. At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors. If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[35]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[36] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the

---

[35] See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f). See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[36] 20 C.F.R. § 404.1520(a)(4).

claimant's record.[37] The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[38]

The claimant bears the burden of proof on the first four steps.[39] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[40] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[41] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[42] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[43]

---

[37] 20 C.F.R. § 404.1545(a)(1).

[38] 20 C.F.R. § 404.1520(e).

[39] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[40] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[41] *Fraga v. Bowen*, 810 F.2d at 1304.

[42] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[43] *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

In this case, the Commissioner found, at step one, that Ms. Chatagnier has not engaged in substantial gainful activity since her alleged disability onset date of April 16, 2009.[44] That finding is supported by evidence in the record. Although Ms. Chatagnier was working as a stocker at Wal-Mart at the time of the hearing, her part-time work did not satisfy the criteria for substantial gainful activity.

At step two, the ALJ found that Ms. Chatagnier has the following severe impairments: macular degeneration and depressive disorder.[45] This finding is also supported by evidence in the record. However, Ms. Chatagnier is not challenging the ALJ's finding that her depressive disorder is not disabling. This appeal concerns only her macular degeneration.

At step three, the ALJ found that Ms. Chatagnier does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[46] Ms. Chatagnier does not argue that this finding was incorrect. In fact, Ms. Chatagnier's visual impairment does not satisfy the standard for a disability based on blindness. "We will consider you blind under the law for a period of disability and for payment of disability insurance benefits if we determine that you are statutorily

---

[44]   Rec. Doc. 9-1 at 18.

[45]   Rec. Doc. 9-1 at 18.

[46]   Rec. Doc. 9-1 at 18.

blind. Statutory blindness is defined in the law as central visual acuity of 20/200 or less in the better eye with the use of correcting lens."[47] The visual acuity of Ms. Chatagnier's right eye is less than 20/200, but she sees much better in her left eye, and her vision in her left eye is correctable to better than 20/200. Therefore, Ms. Chatagnier is neither actually blind nor legally blind.

At the next step of the process, the ALJ found that Ms. Chatagnier retains the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: "no repeat reading, binocular or fine print, no heights or machinery, avoid high stress and frequent interaction with public or production line quotas."[48] At step four, the ALJ found that Ms. Chatagnier is unable to perform her last relevant work.[49] At step five, the ALJ found that there are jobs in significant numbers in the national economy that Ms. Chatagnier can perform. The ALJ then concluded that Ms. Chatagnier was not disabled from April 16, 2009 through the date of the decision.[50]

---

[47] 20 C.F.R. § 404.1581.

[48] Rec. Doc. 9-1 at 20.

[49] Rec. Doc. 9-1 at 22.

[50] Rec. Doc. 9-1 at 23.

## DISCUSSION

Ms. Chatagnier's assignments of error both have to do with her ability to sustain employment in light of her macular degeneration. She contends, first, that the Commissioner failed to address the limitations on her ability to perform sustained work activity that result from her macular degeneration. She contends, second, that the testimony of the vocational expert at the hearing supports her argument that her macular degeneration negatively affects her ability to sustain employment.

The record contains no opinion from any doctor explaining how Ms. Chatagnier's macular degeneration affects her ability to function in the workplace. The lack of limitations imposed by a physician evaluating the claimant's condition supports the ALJ's decision.[51]

Furthermore, the ALJ took into consideration Ms. Chatagnier's complaints concerning her condition in evaluating her residual functional capacity. Ms. Chatagnier testified at the hearing that she is legally blind in her right eye, and that her left eye has the same disease as the right, but it has not progressed.[52] Ms. Chatagnier drives; she takes care of all of her daily activities including grooming, shopping, dishes, and laundry; she helps her mother around the house; and she visits

---

[51] See *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

[52] Rec. Doc. 9-1 at 36.

with friends.[53] It is appropriate for an ALJ to consider the claimant's daily activities when deciding the claimant's disability status.[54] Ms. Chatagnier also testified that reading strains her eyes and that creating art is not as enjoyable as it used to be.[55] It also takes a little while for her to focus when reading fine print.[56] She stated that she has no depth perception because she cannot see out of her right eye and that, if she were to work a full eight hour day, five days per week, she would have to wear a patch over her right eye to keep her left eye focused.[57] She also stated that the visual acuity in her left eye fluctuates.[58]

Based on Ms. Chatagnier's testimony, the ALJ recognized her limited residual functional capacity by excluding jobs requiring a lot of reading, reading of fine print, and binocular vision. To reduce the impact that stress might have on her ability to work, the ALJ also found that she should avoid of working at heights or with machinery and in jobs requiring frequent interaction with the public or production

---

[53] Rec. Doc. 9-1 at 37-38.

[54] *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995); *Reyes v. Sullivan*, 915 F.2d 151, 155 (1990).

[55] Rec. Doc. 9-1 at 38.

[56] Rec. Doc. 9-1 at 43.

[57] Rec. Doc. 9-1 at 46-47.

[58] Rec. Doc. 9-1 at 47.

line quotas. These restrictions accounted for the limitations that Ms. Chatagnier described as arising from her impairment of macular degeneration. But even with these restrictions, the vocational expert found that there are jobs that Ms. Chatagnier can perform.

At the hearing, the vocational expert was asked a hypothetical question concerning frequent absences from work. The expert stated that missing three or more days of work per month would likely be deemed excessive absenteeism and preclude sustained employment. But there is no evidence in the record that Ms. Chatagnier's macular degeneration results in excessive absenteeism. In fact, as stated earlier, there is no medical opinion in the record concerning whether this condition affects Ms. Chatagnier's ability to sustain employment.

Moreover, when asked at the hearing how many hours she was currently working, Ms. Chatagnier said "I take as many [hours] as they give me."[59] The implication of that statement is that Ms. Chatagnier believes she is capable of working more than the approximate twenty-fours per week that she was working at the time of the hearing. A claimant's ability to work despite an allegedly disabling condition supports a finding of not disabled.[60]

---

[59] Rec. Doc. 9-1 at 32.

[60] See, e.g., *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Fraga v. Bowen*, 810 F.2d 1296, 1305 n. 11 (5th Cir. 1987).

Furthermore, Ms. Chatagnier testified at the hearing that she stopped working as a vehicle inspector in October 2010 because she received fewer hours and because of the cost of gasoline.[61] According to her own testimony, she did not stop working because her eyesight precluded her from performing the job. Still, Ms. Chatagnier suggests that she lost her prior employment in Kansas because of her eyesight. But she told mental health consultative examiner Sandra Durdin, Ph.D., that she was fired from a job in July 2009 for shoving a coworker, not because of her vision problems, and that she was let go from two prior positions because of her vision and because "they could see that she was unhappy."[62] The ALJ has the responsibility to evaluate the claimant's credibility and to resolve questions of credibility.[63] Furthermore, the ALJ's credibility evaluations are entitled to considerable deference.[64] In this case, the ALJ properly found Ms. Chatagnier not to be fully credible.

Ms. Chatagnier appears to be arguing that the ALJ erred in failing to make a separate finding that she has the ability to maintain employment on a sustained basis. Such an affirmative finding is required only when an individual's ailment "waxes and

---

[61] Rec. Doc. 9-1 at 33.

[62] Rec. Doc. 9-1 at 306.

[63] *Masterson v. Barnhart*, 309 F.3d at 272.

[64] *McKnight v. Astrue*, 340 Fed. App'x 176, 181 (5th Cir. 2009); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

wanes in its manifestation of disabling symptoms."[65] Absent such a showing, the ALJ's assessment of a claimant's residual functional capacity subsumes the determination that the claimant can maintain employment.[66] Here, although Ms. Chatagnier testified that the visual acuity of her left eye fluctuates some, the record does not contain substantial evidence that her overall impairment or her ability to perform work tasks waxes and wanes. To the contrary, the evaluations of her visual acuity remain very nearly the same throughout her medical records. Therefore, the ALJ was not required to make a separate finding as to the sustainability of employment.

There is no evidence that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's decision is based on substantial evidence in the record. Ms. Chatagnier failed to prove that she is disabled. Accordingly, the undersigned recommends that Commissioner's ruling should be affirmed.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. Chatagnier is not disabled is supported by substantial evidence and was reached by application of the proper legal standards. Accordingly,

---

[65] *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).

[66] *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).

**IT IS RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 20th day of December 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE